IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Robert William Lombardo, | ) | C/A No.: 1:09-1154-HMH-SVH |
| Plaintiff, | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| Sergeant E. Babridge, Sergeant J. McCombs, and Officer J. Shapiro, | ) | |
| Defendants. | ) | |

Plaintiff, who is proceeding *pro se* in this action, is an inmate at Greenville County Detention Center. Plaintiff has asserted claims under 28 U.S.C. § 1983, alleging various claims of violations of his constitutional rights.

Before the court are the following motions: (1) Defendants' Motion to Dismiss/Summary Judgment [Entry #56]; (2) Plaintiff's Motion for Service of Subpoenas [Entry #67]; (3) Plaintiff's Motion for Reconsideration of the Denial of his Motion to Amend the Complaint [Entry #68]; (4) Plaintiff's Motion to Compel [Entry #69]; and (5) Plaintiff's Third Motion to Amend his Complaint [Entry #78].

All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of Civil Rule 73.02(B)(2)(d) (D.S.C.). Because the motions for summary judgment and motions to dismiss are dispositive motions, this Report and Recommendation is entered for review by the district judge.

I.   Factual and Procedural Background

Plaintiff filed his complaint in this action on May 4, 2009, and amended his complaint on August 27, 2009. Defendants filed a motion for dismissal/summary judgment on December 23, 2009. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Plaintiff of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to Defendants' Motion. [Entry #57]. Plaintiff filed a response in opposition to Defendant's Motion. [Entry #71]. Having carefully considered the parties' submissions and the record in this case, the court recommends Defendants' motion for summary judgment be granted, rendering moot the remaining motions.

In his amended complaint, Plaintiff alleges that Defendants' violated the Eight Amendment by using excessive force and by acting with deliberate indifference to his medical needs. Specifically, Plaintiff alleges he was transported to Greenville Memorial Medical Center ("GMMC") from the Greenville County Detention Center ("GCDC") on January 30, 2009 after he complained of back pain. (Compl. 3). Plaintiff was admitted, diagnosed with kidney stones, and stayed for seven days for surgery and a stent. (*Id.*) He was released on February 5, but had an appointment with a urologist on February 9 for stent removal. (*Id.*) According to Plaintiff, on February 9, he noticed he had missed his appointment. (*Id.*) Defendants argue that Plaintiff's February 9 appointment was rescheduled, with his knowledge and cooperation, because he had a court date on the same day. (Defs.' Br. 2, n. 1). Plaintiff claims that he inquired about the appointment with

the medical staff, but received no response. (Compl. 3). He also claims he spoke to an unidentified officer, who told him to speak to a Sergeant about the appointment. (*Id.*)

Plaintiff alleges later in the evening of February 9, he approached Sergeant Earl Babridge while he was on rounds. (Compl. 3). He claims Sergeant Babridge told him to go to his cell. (*Id.*) Plaintiff admits he did nothing in response. (Compl. 4). Sergeant Babridge thereafter told Plaintiff twice more to go to his cell, and he shook his head "no." (*Id.*) Sergeant Babridge then told him to put his hands behind his back. (*Id.*) Plaintiff alleges that he simply "did not move." (*Id.*) Plaintiff's complaint states Sergeant Babridge then put one cuff on him when he was not looking, and that Plaintiff jerked his hand back from the Sergeant. (*Id.*) According to Plaintiff, Sergeant Babridge slammed him into a pole, then face first to the ground, where he twisted his arm and put his knee into his lower back. (*Id.*) He claims he was then taken to lock up (also known as the "SHU") for 11 days as a result of the incident. (*Id.*) Plaintiff also claims he had severe lacerations on his shoulder as a result of this incident. (Compl. 7). The GCDC records show that Plaintiff was examined by the institutional nurse and cleared shortly after being taken to the SHU.

Plaintiff claims that he was denied medical care while in lock up. (*Id.*) He has alleged that he submitted numerous requests to the medical staff that were ignored, and that he asked Sergeant McCombs about his appointment for stent removal. (Compl. 4–5). He claims that Sergeant McCombs released him from lock up on February 20, the day he

approached him about his problem. (Compl. 5). Plaintiff's appointment for stent removal in the interim was rescheduled to February 17, and then to February 23.

Defendants' account of the facts does not differ in any material respect from the facts alleged by Plaintiff, although Defendants provide additional facts. According to Defendants, Plaintiff was extremely displeased with being housed in the SHU. (Defs.' Br. 3). Defendants claim that shortly after being placed in his cell, he broke the sprinkler head, causing a flood. (*Id.*) He also claimed to have taken an excessive number of Tylenol. Because of these claims, he was transported to GMMC. (*Id.*; *see also* Affidavit of Sergeant Earl Babridge ¶6 and Exhibit 4 thereto). Once at GMMC, Plaintiff confessed that he only claimed to have overdosed to "get a vacation" from the SHU. (*Id.*) He denied that he was suicidal, or that he took as many Tylenol as he had claimed. (*Id.*) Plaintiff's trip to the GMMC ER occurred within hours after the incident giving rise to Plaintiff's claim.

II. Standard of Review

A federal court must liberally construe pleadings filed by pro se litigants, to allow them to fully develop potentially meritorious cases. *See Cruz v. Beto*, 405 U.S. 319 (1972); *see also Haines v. Kerner*, 404 U.S. 519 (1972). In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim. *Weller v. Department of Social Services*, 901 F.2d 387 (4th Cir.

1990). Nor can the court assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c). The movant has the burden of proving that a judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial." The opposing party may not rest on the mere assertions contained in the pleadings. Fed. R. Civ. P. 56(e); *see also Celotex v. Catrett*, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial. *See* Fed. R. Civ. P. 56(c). Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact." In the *Celotex* case, the court held that defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the plaintiff failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof. *Celotex*, 477 U.S. at 322-323.

III. Analysis

    A. Excessive Force

In an excessive force case, a claimant must meet a heavy burden to satisfy the subjective component of the claim; specifically, he must prove that correctional officers

applied force "maliciously and sadistically for the very purpose of causing harm" rather than in a good-faith effort to maintain or restore discipline. *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986); *see also Wilkins v. Gaddy*, --- U.S. ----, 130 S.Ct. 1175 (2010). The objective component of an excessive force claim is not nearly as demanding, however, because "[w]hen prison officials maliciously and sadistically use force to cause harm' ... 'contemporary standards of decency are always violated ... whether or not significant injury is evidence. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury.'" *Wilkins*, 130 S.Ct. at 1179 (quoting *Hudson v. McMillan*, 503 U.S. 1, 7 (1992)).

The Supreme Court has directed that several factors should be balanced in determining whether prison officials acted maliciously and sadistically. These factors include (1) the necessity for the application of force; (2) the relationship between the need for force and the amount of force used; (3) the extent of the injury actually inflicted; (4) the extent of the threat to the safety of the staff and prisoners, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) the efforts taken by the officials, if any, to temper the severity of the force applied. *Whitley*, 475 U.S. at 321.

Here, Sergeant Babridge's use of force was not excessive. It appears that Sergeants Babridge's use of force was necessary, in that Plaintiff admits he refused to follow Sergeant Babridge's direct order and continued to ignore Sergeant Babridge's

multiple attempts to handle the matter verbally and without the use of force. Sergeant Babridge's use of force was also within reason, as he first handcuffed Plaintiff and only resorted to further force upon Plaintiff's sudden jerking during the handcuffing. Sergeant Babridge reasonably perceived Plaintiff's defiance in responding to Sergeant Babridge's orders and his sudden movements as a threat to the safety to the staff and prisoners.

Plaintiff claims he had severe lacerations on his shoulder as a result of the force applied by Sergeant Babridge, and an affidavit from a fellow inmate says he witnessed an abrasion on Plaintiff's left shoulder/chest area that appeared to be about a week old on February 20, 2010. Assuming Plaintiff's allegations regarding the injury to be true, the injury was not severe, as the record indicates Plaintiff was examined and cleared by the institutional nurse. Thus, after weighing the *Whitley* factors, the court finds that Plaintiff's evidence is insufficient to establish Sergeant Babridge or other prison officials sadistically or maliciously used force to cause harm. Plaintiff's excessive force claim must therefore be denied.

B.  Medical Indifference

In the case of *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court reviewed the Eighth Amendment prohibition of punishments which "involve the unnecessary and wanton infliction of pain," *Id.* (quoting *Gregg v. Georgia*, 428 U.S. 153, 169-73 (1976)). The court stated:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. . . . We therefore conclude that deliberate indifference to serious medical needs of a prisoner

> constitutes the "unnecessary and wanton infliction of pain," proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

*Estelle*, 429 U.S. at 103-105 (citations and footnotes omitted). Despite finding that "deliberate indifference to serious medical needs" was unconstitutional, the court was careful to note, however, that "an inadvertent failure to provide adequate medical care" does not meet the standard necessary to allege an Eighth Amendment violation:

> [A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 107.

The Court of Appeals for the Fourth Circuit has also considered this issue in the case of *Miltier v. Beorn*, 896 F.2d 848 (4th Cir. 1990). In that case, the court noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness, . . . nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." *Id.* at 851 (citations omitted). Unless medical needs were serious or life threatening, and the defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the

plaintiff may not prevail. *Estelle*, 429 U.S. at 102–103; *Farmer v. Brennan*, 511 U.S. 825 (1994); *Sosebee v. Murphy*, 797 F.2d 179 (4th Cir. 1986).

Further, incorrect medical treatment, such as an incorrect diagnosis, is not actionable under 42 U.S.C. § 1983. *Estelle*, 429 U.S. at 105–106. Negligence, in general, is not actionable under 42 U.S.C. § 1983. *See Daniels v. Williams*, 474 U.S. 327, 328-36 & n. 3 (1986); *Davidson v. Cannon*, 474 U.S. 344, 345-48 (1986); *Ruefly v. Landon*, 825 F.2d 792, 793-94 (4th Cir.1987); *see also Pink v. Lester*, 52 F.3d 73, 78 (4th Cir. 1995) (applying *Daniels* and *Ruefly*: "The district court properly held that Daniels bars an action under § 1983 for negligent conduct.").

Secondly, 42 U.S.C. § 1983 does not impose liability for violations of duties of care arising under state law. *DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 200-03 (1989). Similarly, medical malpractice is not actionable under 42 U.S.C. § 1983. *Estelle*, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *see also Brooks v. Celeste*, F. 3d 125 (6th Cir. 1994) ("Although several courts prior to the Supreme Court's decision in *Farmer v. Brennan*, *supra*, held that 'repeated acts of negligence could by themselves constitute deliberate indifference, *Farmer* teaches otherwise."); *Sellers v. Henman*, 41 F.3d 1100, 1103 (7th Cir. 1994) ("If act A committed by the X prison shows negligence but not deliberate indifference, and B the same, and likewise C, the prison is not guilty of deliberate indifference."); *White v. Napoleon*, 897 F.2d 103, 108-109 (3rd Cir. 1990); *Smart v. Villar*, 547 F.2d 114 (10th Cir. 1976) (affirming summary dismissal).

Although the Constitution requires that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice. *Jackson v. Fair*, 846 F. 2d 811, 817 (1st Cir. 1988). Although the provision of medical care by prison officials is not discretionary, the type and amount of medical care is discretionary. *See Brown v. Thompson*, 868 F. Supp. 326 (S.D. Ga. 1994). Further, a disagreement as to the proper treatment to be received does not in and of itself state a constitutional violation. *See Smart v. Villar*, 547 F. 2d 112 (10th Cir. 1976); *Lamb v. Maschner*, 633 F. Supp. 351, 353 (D.Kan. 1986). Mistakes of medical judgment are not subject to judicial review in a § 1983 action. *Russell v. Sheffer*, 528 F. 2d 318, 319 (4th Cir. 1975).

Most pertinent to the case at hand, any claims of medical indifference as to defendants should be dismissed as they are not medical personnel and plaintiff has not shown that they interfered with his medical care. The Fourth Circuit has held that to bring a claim alleging the denial of medical treatment against non-medical prison personnel, an inmate must show that such officials were personally involved with a denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct. *Miltier v. Beorn*, 896 F.2d 848 (4th Cir.1990). Prison personnel may rely on the opinion of the medical staff as to the proper course of treatment. *Id.*

Under these principles, Plaintiff has not alleged sufficient facts stating any claim actionable under § 1983 regarding his medical treatment against Defendants, who are

non-medical personnel. Plaintiff only alleges that Sergeant McCombs interfered with his medical treatment by keeping him in the SHU. (Compl. 4). However, Plaintiff's own pleadings indicate that Sergeant McCombs released Plaintiff from the SHU upon Plaintiff's medical complaints on February 20, 2009. Plaintiff's amended complaint does not allege that he had any contact with Sergeant McCombs prior to that date. Furthermore, Plaintiff admits that medical staff came by to give him prescription pain medication regularly. (Compl. 4–5). Therefore, any claims against Defendants for medical indifference fail.

Based on the evidence presented, there has been no deliberate indifference shown to the overall medical needs of Plaintiff. For the above stated reasons, summary judgment should be granted in favor of Defendants on this issue.

C. Qualified Immunity

Defendants also assert that they are entitled to qualified immunity in their individual capacities. The Supreme Court in *Harlow v. Fitzgerald*, 457 U.S. 800, 102 (1982), established the standard which the court is to follow in determining whether the defendant is protected by this immunity. That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow*, 457 U.S. at 818.

In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual

constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *see also Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). Further, the Supreme Court held that "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." *Wilson*, 526 U.S. at 609. If the court first determines that no right has been violated, the inquiry ends there "because government officials cannot have known of a right that does not exist." *Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998). As discussed above, Plaintiff has failed to present sufficient evidence to support his constitutional violation allegations. Nevertheless, *assuming arguendo* that Plaintiff has presented sufficient evidence of a constitutional violation, Defendants are entitled to qualified immunity from suit.

In *Maciariello v. Sumner*, 973 F.2d 295 (4th Cir. 1992), the Fourth Circuit further explained the theory of qualified immunity:

> Governmental officials performing discretionary functions are shielded from liability for money damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Moreover, there are two levels at which the immunity shield operates. First, the particular right must be clearly established in the law. Second, the manner in which this right applies to the actions of the official must also be apparent. Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.

*Maciariello*, 973 F.2d at 298.

In the instant case, Plaintiff has failed to establish any theory of liability upon the part of Defendants, and, furthermore, Plaintiff has failed to establish the existence of any constitutional deprivation. However, if the court were to find that Plaintiff has established some theory of liability upon the part of Defendants, and therefore, the existence of a constitutional deprivation, Defendants are still entitled to qualified immunity. The record before the court shows that as to Plaintiff and the specific events at issue, these Defendants performed the discretionary functions of their respective official duties in an objectively reasonable fashion. They did not transgress any statutory or constitutional rights of Plaintiff that they were aware of in the discretionary exercise of their respective professional judgments. Thus, to the extent the district judge finds that a constitutional violation occurred, these Defendants are entitled to qualified immunity.

IV.   Conclusion

For the reasons discussed above, it is recommended that Defendants' Motion for Summary Judgment [Entry #56] be granted and this case be dismissed in its entirety. If the district judge accepts this recommendation, all other pending motions will be moot.

IT IS SO RECOMMENDED.

July 9, 2010                                        Shiva V. Hodges
Florence, South Carolina                            United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**